JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

18-C-0167

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
BB&T Commercial Equipment Capital Corp.

**DEFENDANTS**
Boersen Farms Inc.

18   167

**(b)** County of Residence of First Listed Plaintiff   Chester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Ottawa
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Barbara Lanza Farley, A Professional Corporation
PO Box 53659
Philadelphia, PA 19105

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☒ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1391
Brief description of cause:
Breach of three commercial contracts by non-payment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
268,022.33

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

JAN 12 2018

DATE
01/11/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**                    18    167

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 2 Great Valley Parkway  Suite 300  Malvern PA 19355

Address of Defendant: 624 Ransom St  Zeeland MI 49464

Place of Accident, Incident or Transaction: 2 Great Valley Parkway  Suite 300  Malvern PA 19355
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))                    Yes☑ No☐

Does this case involve multidistrict litigation possibilities?                    Yes☐ No☑
RELATED CASE, IF ANY:
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
                                                                                    Yes☐ No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
                                                                                    Yes☐ No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
                                                                                    Yes☐ No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
                                                                                    Yes☐ No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. Federal Question Cases:

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. Diversity Jurisdiction Cases:

1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

**ARBITRATION CERTIFICATION**
(Check Appropriate Category)

I, Barbara L Farley, Esquire, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: 1/11/18        _____        18845
                        Attorney-at-Law                    Attorney I.D.#
NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.
                                                                        JAN 12 2018

DATE: 1/11/18        _____        18845
                        Attorney-at-Law                    Attorney I.D.#

CIV. 609 (5/2012)



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

BB&T Commercial Equipment Capital
Corp                         :                    CIVIL ACTION
                 v.          :
                             :          **18        167**
Boensen Farms Inc            :                      NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for
plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of
filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse
side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said
designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on
the plaintiff and all other parties, a Case Management Track Designation Form specifying the track
to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (X)

| 1/11/18 | Barbara L Farley | Attorney for Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | |
| 215 923 9696 | 856 428 3995 | blfpclaw@gmail.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

JAN 12 2018

**BARBARA LANZA FARLEY**
A PROFESSIONAL CORPORATION
ATTORNEY AT LAW

13 WILKINS AVENUE
HADDONFIELD, NJ 08033
(856) 546-1577
TELECOPIER (856) 428-3867

MEMBER OF NEW JERSEY
AND PENNSYLVANIA BAR
LL.M. IN TAXATION

PO BOX 53659
PHILADELPHIA, PA 19105
(215) 923-9696
CELLPHONE 856-979-4678

PLEASE REPLY TO:
PHILADELPHIA
REFER TO 582*196

E-MAIL: blfpclaw@gmail.com

January 11, 2018

Clerk of the Court EDPA
2609 US Courthouse
601 Market St
Philadelphia, Pennsylvania 19106-1797

**18     167**

Re: BB&T v Boersen Farms Inc.
Enclosed herewith please find the following:

( ) Acknowledgement of Service
( ) Affidavit of Service
( ) Certificate of Dissolution
(X) Check in the amount of $400.00
(X) Civil Cover Sheet and other sheets
(X) Complaint and (1) copies
( ) Final Judgment by Default
( ) Interrogatories

( ) Motion
( ) Notice
( ) Order for Service
(X) Postage Prepaid Envelope
( ) Proof of Claim
( ) Request to Enter Default
( ) Summons

Would you please:

( ) Complete and return Interrogatories within time
(X) File and return filed copy of Complaint
( ) Forward to Sheriff for Service with envelopes
( ) Notify this office as to
( ) Prepare an exemplifed copy
( ) Serve defendant(s) at:
( ) Sign

Very truly yours,

BARBARA LANZA FARLEY,
A PROFESSIONAL CORPORATION

BY:
 Barbara L. Farley, Esquire

Enclosures

JAN 12 2018

JAN 12 2018





UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

BB&T COMMERCIAL EQUIPMENT : 
CAPITAL CORP
    :

          Plaintiff       :    Civil Action
vs.               :    No.
                    :

BOERSEN FARMS INC.        :

          Defendant    :

FILED

JAN 1 2 2018

KATE BARKMAN Clerk
By_____ Dep. Clerk

18   167

## COMPLAINT

1.      Plaintiff, BB&T Commercial Equipment Capital Corp. ("Plaintiff") is a corporation in good standing under the Laws of the Commonwealth of Pennsylvania, with its principal place of business located 2 Great Valley Parkway, Suite 300, Malvern, Pennsylvania, 19355.

2.      Defendant, Boersen Farms Inc. is a Michigan Company with a place of business located at 6241 Ransom St., Zeeland, MI 49464.

3.      The matter in controversy herein exceeds, exclusive of interest and costs, the sum of Seventy Five-Thousand Dollars ($75,000.00). Jurisdiction is based on diversity of citizenship, with a venue proper pursuant to 28 USC 1391.

4.      On or about June 19, 2014, Defendant executed a "Lease Agreement" ("Agreement 1") with Leaf Capital Funding, LLC to lease certain equipment, including but not limited to one 1119ft Valley 8000 Series Center Pivot, 667 ft Valley 8000 Series Center Pivot ("Equipment 1") for sixty (60) monthly installments in the amount of $2,548.94 each, with a true and correct copy of Agreement 1 being set forth as Exhibit "A" hereto.

5.      On or about June 5, 2015, Defendant executed a "Finance Agreement" ("Agreement 2") with Leaf Capital Funding, LLC to purchase certain equipment, including but not limited to 954

1

Ft Valley 8000 Series Center Pivot Ser: 11149878, 632 Ft Valley 8000 Series Center Pilot Ser: 11149876 ("Equipment 2") for sixty (60) monthly installments in the amount of $2,184.07 each, with a true and correct copy of Agreement 2 being set forth as Exhibit "B" hereto.

6.      On or about June 12, 2015, Defendant executed a "Finance Agreement" ("Agreement 3") with Leaf Capital Funding, LLC. to purchase certain equipment, including but not limited to 789 Ft. Valley 8000 Series Center Pivot, 599 Ft Valley 800 Series Center Pivot, 692 Ft Valley 8000 Series Center Pivot, 726 Ft. Valley 8000 Series Center Pivot ("Equipment 3") for sixty (60) monthly installments in the amount of $4,157.70 each, with a true and correct copy of Agreement 3 being set forth as Exhibit "C" hereto.

7.      On or about July 31, 2017, Leaf Capital Funding, LLC assigned its interest in Agreements 1-3 and Equipments 1-3 and all related documents to plaintiff pursuant to an Assignments with a true and correct copy of the Assignments being attached hereto and marked as Exhibit "D-F".

8.      For purposes hereof, Agreement 1, Agreement 2 and Agreement 3 shall sometimes be collectively referred to as the "Agreements". For purposes hereof, Equipment 1, Equipment 2, and Equipment 3 shall sometimes be collectively referred to as the "Equipment".

### Defaults

1.      Defendant defaulted under the Agreements as follows:

   a) Defendant made 38 payments under the terms of Agreement 1, but defaulted by failing to pay the payment due July 30, 2017 and all payments due thereafter, at which time 22 monthly payments remained due and payable of $2,548.94 each, for a total gross balance due of $56,076.68 plus late fees of $764.68 plus expenses of collection including attorney fees at the rate of

2

15% of the balance, plus interest from the date of judgment, and applicable additional late charges

b) Defendant made 27 payments under the terms of Agreement 2, but defaulted by failing to pay the payment due July 30, 2017 and all payments due thereafter, at which time 33 monthly payments remained due and payable of $2,184.07 each, for a total gross balance due of $72,074.31 plus late fees of $655.24  plus expenses of collection including attorney fees at the rate of 15% of the balance, plus interest from the date of judgment, and applicable additional late charges.

c) Defendant made 27 payments under the terms of Agreement 3, but defaulted by failing to pay the payment due July 30, 2017 and all payments due thereafter, at which time 33 monthly payments remained due and payable of $4,157.70 each, for a total gross balance due of $137,204.10 plus late fees of $1,247.32  plus expenses of collection including attorney fees at the rate of 15% of the balance, plus interest from the date of judgment, and applicable additional late charges.

d) The total amount due under the Agreements is the sum $268,022.33 plus expenses of collection including attorney fees at the rate of 15% of the balance plus interest from the date of judgment, and applicable additional late charges.

2. As a result of Defendant's default under the Agreements, Defendant is obligated for the balance due under the Agreements as follows:

a) Agreement 1 – the gross balance being in the amount of $56,841.36 plus

expenses of collection including attorney fees at the rate of 15% of the balance, plus interest from the date of judgment, and applicable additional late charges and return the liened Equipment in Replevin for the purposes of sale and application of proceeds.

b) Agreement 2 – the gross balance being in the amount of $72,729.55 plus expenses of collection including attorney fees at the rate of 15% of the balance, plus interest from the date of judgment, and applicable additional late charges and return the liened Equipment in Replevin for the purposes of sale and application of proceeds.

c) Agreement 3 - the gross balance being in the amount of $138,451.42 plus expenses of collection including attorney fees at the rate of 15% of the balance, plus interest from the date of judgment, and applicable additional late charges and return the liened Equipment in Replevin for the purposes of sale and application of proceeds.

d) The total amount due under the Agreements is the sum of $268,022.33 plus expenses of collection including attorney fees at the rate of 15% of the balance, plus interest from the date of judgment, and applicable additional late charges and return the liened Equipment in Replevin for the purposes of sale and application of proceeds.

3. Jurisdiction is proper in the Eastern District of Pennsylvania in this action by virtue of: (a) the failure of monies to be paid by the Defendant to Plaintiff at its place of business in Chester County, Pennsylvania, where such payments are due, (b) express provisions contained in the Agreements

4

wherein Defendant consented to jurisdiction in the United States District Court for the Eastern District of Pennsylvania in actions enforcing those agreements.

## BREACH OF CONTRACT

1.By reason of Defendant's default under the Agreements, Defendant is liable to Plaintiff in the sum of Two Hundred Sixty Eight Thousand Twenty Two and 33/100ths Dollars ($268,022.33) plus expenses of collection including attorney fees at the rate of 15% of the balance, plus interest from the date of judgment, and applicable additional late charges and return the liened Equipment in Replevin for the purposes of sale and application of proceeds.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant in the sum of Two Hundred Sixty Eight Thousand Twenty Two and 33/100ths Dollars ($268,022.33) plus expenses of collection including attorney fees at the rate of 15% of the balance, plus interest from the date of judgment, and applicable additional late charges and return the liened Equipment in Replevin for the purposes of sale and application of proceeds.

## REPLEVIN

13.     Plaintiff has a duly perfected Security Interest in the Equipment 1-3, as evidenced by the UCC-1s filed with the Commonwealth of Pennsylvania, being attached hereto and made a part hereof, marked Exhibits "G-I".

14.     By virtue of the aforementioned default by Defendant, Plaintiff is entitled to possession of the Equipment.

WHEREFORE, Plaintiff requests entry of judgment against Defendant to the effect that:

(1)     Plaintiff has the right to possession of 1119ft Valley 8000 Series Center, 667 ft Valley 8000 Series Center Pivot;  954 Ft Valley 8000 Series Center Pivot Ser: 11149878, 632 Ft Valley 8000 Series Center Pilot Ser: 11149876; and 789 ft. Valley 8000 Series Center Pivot, 599 Ft Valley 800 Series Center Pivot, 692 Ft Valley 8000 Series Center Pivot, 726 Ft. Valley 8000 Series Center Pivot;

(2)     Defendant be directed to turn over possession of 1119ft Valley 8000 Series Center, 667 ft Valley 8000 Series Center Pivot; 954 Ft Valley 8000 Series Center Pivot Ser: 11149878, 632 Ft Valley 8000 Series Center Pilot Ser: 11149876; and 789 ft. Valley 8000 Series Center Pivot, 599 Ft Valley 800 Series Center Pivot, 692 Ft Valley 8000 Series Center Pivot, 726 Ft. Valley 8000 Series Center Pivot.

(3)     Plaintiff be awarded damages in the amount of Two Hundred Sixty Eight Thousand Twenty Two and 33/100ths Dollars ($268,022.33), plus expenses of collection including attorney fees at the rate of  15% of the balance, plus interest from the date of judgment, and applicable additional late charges representing the contractual damages are as outlined in the Complaint, from which Plaintiff shall deduct the net proceeds from the disposition of the Equipment, ("net" meaning repossession and resale expenses, collection expenses and attorney fees, and court costs);

(4)     Interest and costs of suit to the extent permitted by the Obligation Documents and

by law.


Dated: January 10, 2018                    ATTORNEY FOR PLAINTIFF

                                           BARBARA LANZA FARLEY,
                                           A PROFESSIONAL CORPORATION

                                           BY:/s/Barbara L Farley, Esquire
                                           Barbara L. Farley, Esquire
                                           PO Box 53659
                                           Philadelphia, PA  19105
                                           215-923-9696
                                           Fax 856-428-3995
                                           PA Atty. ID 18845
                                           blfpclaw@gmail.com

# ØLEAF

**LEASE AGREEMENT**

2005 Market Street, 14th Floor, Philadelphia, PA 19103
Phone: 800-819-5556, Fax: 215-553-8584

## LESSEE INFORMATION

| Lessee Legal Name | | | | Address | | |
|---|---|---|---|---|---|---|
| Boersen Farms Inc | | | | 6241 Ransom St | | |
| City | County | | State | Zip | Phone | |
| Zeeland | Ottawa | | MI | 49464 | 616-875-7880 | |

## EQUIPMENT DESCRIPTION

| Unit Quantity | Description of Equipment: (indicate new or used and include make, model, serial # and all attachments -- see below and/or attached Schedule A) |
|---|---|
| 1 | 1119R VALLEY 8000 SERIES CENTER (NEW) |

| Equipment Location: Same (X) Other ( ) | Address | City | State | Zip |
|---|---|---|---|---|
| | 6241 Ransom St | Zeeland | MI | 49464 |

## BASE TERM AND PAYMENT SCHEDULE

| Base Term in Months | Lease Payments: (X) Monthly ( ) Quarterly ( ) Other |
|---|---|
| 60 | 60 Lease Payments at $2,548.94 (Plus applicable taxes) |

Upon Lease expiration and 90 days prior notice to us, if you are not in default, you have the option to purchase not less than all the Equipment for the amount indicated below, plus applicable taxes:

____ FAIR MARKET VALUE ____ 10% of original Equipment cost X $1.00

End of lease purchase option shall be Fair Market Value unless another option is selected.

(a) Total Advance Lease Payment: 2 Months = $5,097.88;**

(b) A Security Deposit in the amount of: $0.00;

(c) A Documentation Fee in the amount of: $195.00.

Due upon Lease signing: a + b + c = $5,292.88.

**If more than one month's Lease Payment is required as an Advance Lease Payment, the additional amount will be applied on the lease commencement date to Lease Payments in inverse order, starting with the last Lease Payment.

If you are tax exempt please attach certificate and write your tax-exempt number below:

# ____

## LESSEE SIGNATURE

| Lessee Legal Name |
|---|
| Boersen Farms Inc |

Authorized Signature (Lessee agrees to the terms on page one and two of this Lease.)

X _____

Print Authorized Signer Name: DENNIS BOERSEN

Authorized Signer Title: President

E-Mail Address: _____

Dated: 6-19-14

**PERSONAL GUARANTY:** The undersigned guarantees that the Lessee will make all payments and perform all other obligations under the Lease when due. Undersigned agrees that this is a guaranty of payment and not of collection, and that we can proceed directly against undersigned without first proceeding against the Lessee, the Equipment or other collateral. The undersigned also waives all suretyship defenses and any notification of the Lessee is in default and consents to any extensions or modifications granted to the Lessee. In the event of a default, the undersigned will immediately pay any and all sums due in accordance with the default provisions of the Lease. Undersigned will pay to us all expenses (including attorneys' fees) incurred by us in enforcing our rights against undersigned or the Lessee. If more than one person has signed this personal guaranty, each of the undersigned agrees that his/her liability is joint and several. Undersigned authorizes us or any of our affiliates to obtain credit bureau reports and make credit inquiries regarding undersigned's personal credit. You consent to jurisdiction in the State or Federal courts in Pennsylvania and expressly waive any right to a trial by jury.

SIGNED X _____     SIGNED X _____

PRINT NAME: _____     PRINT NAME: _____
(Do not print title)                              (Do not print title)

E-Mail Address: _____     E-Mail Address: _____

| LEAF CAPITAL FUNDING, LLC By: _____ | Title: VP Operations | Date: 6/23/2014 |
|---|---|---|

## TERMS AND CONDITIONS

Throughout this agreement the words "We," "Our," and "Us" refer to the Lessor, LEAF Capital Funding, LLC. The words "You" and "Your" refer to the Lessee indicated above. You agree to lease the Equipment described above or in a schedule attached hereto ("Equipment") and agree to the terms and conditions of this Lease Agreement ("Lease").

1. **LEASE PAYMENTS AND TERM:** You agree to pay us the Lease Payments in advance on each month (or other payment period) during the Term. We may adjust the Lease Payments upward or downward by no more than 15% if the invoiced costs of the Equipment are different than the estimated amount we used to calculate the Lease Payments shown above. Your obligation to pay the Lease Payments and all other obligations herein are absolute, unconditional and non-cancellable and are not subject to any abatement, set-off, defense or counterclaim for any reason whatsoever. The Lease shall be binding and enforceable on you upon your execution thereof. The term of the Lease shall commence on the date the Equipment is delivered to you ("Lease Commencement Date"). The first Lease Payment shall be due on the date we specify in the month following the Lease Commencement Date, as set forth in our invoice and the remaining Lease Payments will be due on the same day of each subsequent month (each, a "Payment Date") until paid in full. The Base Term shall commence on the date one month prior to the first Payment Date. We may charge you a portion of one Lease Payment for the period from the Lease Commencement Date until the day

preceding the first day of Base Term ("Interim Rent"). Interim Rent shall be due and payable as invoiced.

2. **DELIVERY, INSTALLATION AND ACCEPTANCE:** You are responsible for arranging delivery and installation of the Equipment. Unless you notify us otherwise in writing within 10 days of delivery, you unconditionally accept the Equipment. We may require you to provide us a signed delivery and acceptance certificate. You authorize us to fill in the Lease Commencement Date, due dates, serial numbers, VIN numbers and other information which becomes available to us during the term of the Lease. We are not responsible for the Equipment or vendor failures.

3. **EQUIPMENT LOCATION, USE AND REPAIR:** You will maintain and use the Equipment only at the location shown above. You agree that the Equipment cannot be moved from that location without our advance written approval. You are responsible for maintaining the Equipment in good repair, condition, and in proper working order, except for normal wear and tear.

4. **INDEMNIFICATION:** As between you and us, you are responsible for and agree to indemnify, defend and hold us harmless from and against any losses, damages, penalties, claims, suits, including attorneys' fees and expenses, and actions, whether based on a theory of strict liability or otherwise caused in or related to the ordering, manufacture, installation, ownership, condition, use, lease, possession, delivery or return of the Equipment or any defects in the Equipment.

5. **LEASE EXPIRATION AND RENEWAL:** Unless you notify us in writing at least 90 days prior to the expiration of the Lease, or any renewal term, of your intention to return the Equipment to us or to exercise the purchase option indicated above, this Lease will automatically renew on a month-to-month basis at the same monthly Lease Payment amount until you either exercise the purchase option or provide us with the required notice and return the Equipment to us. If you exercise a purchase option we will convey all of our right, title and interest in such Equipment to you on an AS-IS WHERE IS basis without representation or warranty. If you elect to return the Equipment to us, (i) it must be to the location we designate and you are responsible for all return costs and we may charge a Restocking Fee equal to one Lease Payment, and (ii) you must securely remove all data from any and all disk drives or magnetic media prior to returning the Equipment (and you are solely responsible for selecting an appropriate removal standard that meets your business needs and complies with applicable laws). You will pay us for any loss in value resulting from failure to maintain the Equipment in accordance with the Lease or the damages incurred in shipping and handling. Your obligation to pay rent will continue until the Equipment is returned to our designated return location.

6. **LATE FEES AND COLLECTION CHARGES:** If any amount payable to us is not paid within five (5) days of when due, you agree to pay us a late charge equal to the greater of: (a) 10% of the amount which is late or $10.00, or if less, (b) the maximum legal amount. You agree to pay us $25.00 for each check by phone payment and $35.00 for each returned check. Amounts which are not paid within 30 days of when due shall accrue interest at 1.5% per month (or such lesser rate as is the maximum rate allowable under applicable law) from such 30th day until paid in full.

7. **NO WARRANTY:** The Equipment is being leased to you "as is". You acknowledge that we do not manufacture the Equipment and that you have selected the Equipment and the supplier based on your own judgment. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE IN CONNECTION WITH THE EQUIPMENT. WE ARE NOT RESPONSIBLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES. WE ARE NOT LIABLE FOR ANY LOSS OR INJURY TO YOU OR TO ANY THIRD PERSON OR PROPERTY, INCLUDING DIRECT, INDIRECT, CONSEQUENTIAL, INCIDENTAL AND SPECIAL DAMAGES CAUSED BY THE USE, OWNERSHIP, LEASE OR POSSESSION OF THE EQUIPMENT. You agree to continue making Lease Payments to us, regardless of any claims you may have against the manufacturer or supplier. We transfer to you for the term of this Lease any warranties made by the manufacturer or the supplier. No representation or warranty by the manufacturer or supplier is binding on us nor shall breach of such warranty relieve you of your obligation to us as provided herein.

8. **INSURANCE RISK OF LOSS:** From the time the Equipment is ordered until it is returned in the required condition or purchased by you ("Risk Period"), you are responsible for all risk of loss or damage to the Equipment. During the Risk Period, you will procure and maintain at your expense, property insurance for the full replacement value of the Equipment, and public liability insurance in an amount acceptable to us, covering any personal injury, death or third-party property damage arising out of or relating to the use or operation of the Equipment. You will provide us evidence of such insurance when requested, naming us as loss payee and as an additional insured. If you do not provide us with proof of such insurance, we may secure insurance on the Equipment to cover our interests (and only our interests). If we obtain such insurance, you will pay us an additional amount for the cost of such insurance and an administrative fee, the cost of which may be more than the cost to obtain your own insurance and on which we may make a profit. We reserve the right to increase such monthly charge in the event that our costs for providing such services increase. If we purchase such insurance on your behalf, it shall not relieve you of any obligations under this Lease or release you from any claims we may have against you.

9. **OWNERSHIP, TAXES AND UCC's:** We are the owner of the Equipment and hold title to the Equipment (excluding items of Equipment which are licensed software and products). You will pay, when due, all taxes, fines and penalties relating to the purchase, use, leasing and/or ownership of the Equipment under this Lease. The Lease Payments shown above do not include any applicable taxes. We will include any applicable taxes and fees in our invoice to you. You agree to pay the tax and fees in addition to your Lease Payments. For administrative purposes, unless otherwise directed by us in writing, you will list Lessee as the owner of the Equipment for property tax purposes and file and pay when due any and all property taxes relating to the Equipment directly to the taxing authority and if requested provide us with evidence of such compliance. If we pay any taxes, fees or penalties on your behalf, you will pay us on demand the amount we have paid on your behalf plus an administrative fee. You authorize us to sign and record UCC financing statements and other documents we deem necessary to confirm our interest in the Equipment. You agree to pay us a documentation fee equal to the amount specified on page one of this Lease, or if not so specified, the greater of either $250.00 or 0.5% of the total of Equipment invoices, which amount shall be paid together with your first Lease

Payment, to cover our expense in processing this Lease and perfecting our interest in the Equipment. If we require a site inspection to verify the condition and/or existence of the Equipment, or you request administrative services (i.e., property tax research), you agree to reimburse our costs as invoiced.

10. **DEFAULT:** If you or any guarantor do not pay the monthly Lease Payment or any other amount payable to us within ten (10) days of its due date, or breach any of the terms or conditions of this Lease, any guaranty of license relating to the Equipment, you will be in default of this Lease and any other agreement you may have entered into with us or any of our affiliates. If you default, we may require you to do any combination of the following: (a) immediately pay all amounts then due, plus the present value of the remaining Lease Payments, Interim Rent and residual value of the Equipment, as determined by us, discounted at an annual rate of 3%, (b) promptly return all of the Equipment; (c) allow us to peaceably repossess the Equipment; or (d) use any and all remedies available to us under the Uniform Commercial Code or any other applicable law. You agree to pay the cost of repossession and our reasonable attorney's fees and costs associated with any legal action we may take in the event of your default. In addition to all other charges and as reimbursement for the expenses incurred and not as a penalty, we may require you to reimburse us for the phone calls, letters and any additional expense incurred in the collection and servicing of this Lease to you. If we take possession of the Equipment, we may sell or otherwise dispose of it with or without notice, at a public or private sale, and apply the net proceeds (after we have deducted all costs related to the sale or disposition of the Equipment) to the amounts that you owe us. You agree that if notice of sale is required by law, 10 days' notice shall constitute reasonable notice. You remain responsible for any amounts that are due after we have applied such net proceeds. We may apply any security deposits to your obligations under this Lease. Upon termination, if you are not in default, any security deposit will be refunded without interest.

11. **ASSIGNMENT:** YOU HAVE NO RIGHT TO SELL, TRANSFER, ASSIGN OR SUBLEASE THE EQUIPMENT OR THIS LEASE. We may sell, assign or transfer this Lease or our rights in the Equipment without notice to you. If we sell, assign or transfer this Lease, the new owner will have the same rights and benefits we have now, but the new owner will not be subject to any claim, defense or setoff that you may have against us.

12. **ARTICLE 2A RIGHTS AND REMEDIES:** You agree that this Lease is a "finance lease" as that term is defined in Article 2A of the Uniform Commercial Code ("UCC"). You hereby agree to waive any and all rights and remedies granted to you by sections 2A-508 through 2A-522 of the UCC. By signing this Lease, you agree that either (a) you have reviewed, approved, and received, a copy of the Supply Contract or (b) that we have informed you of the identity of the Supplier, that you may have rights under the Supply Contract, and that you may contact the Supplier for a description of those rights.

13. **CHOICE OF LAW:** THIS LEASE WILL BE GOVERNED BY, ENFORCED IN AND INTERPRETED ACCORDING TO THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA. YOU CONSENT TO JURISDICTION IN THE STATE OR FEDERAL COURTS OF PENNSYLVANIA. YOU EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY.

14. **ABSOLUTE OBLIGATION:** YOUR OBLIGATION TO PAY THE LEASE PAYMENTS AND OTHER AMOUNTS AND PERFORM ALL OTHER OBLIGATIONS HEREUNDER IS NONCANCELLABLE, ABSOLUTE AND UNCONDITIONAL AND NOT SUBJECT TO ABATEMENT, SET-OFF, DEFENSE OR COUNTERCLAIM. You agree that the terms and conditions contained in this Lease make up the entire agreement between you and us regarding the lease of the Equipment. You agree that any delay or failure to enforce our rights under this Lease does not prevent us from enforcing any such rights at a later time. All of our rights and indemnities will survive the termination of this Lease.

15. **ENTIRE AGREEMENT:** This Lease constitutes the entire agreement between the parties concerning the subject matter hereof and incorporates all representations made in connection therewith. The terms hereof may not be terminated, amended, supplemented or modified orally, but only in writing signed by you and us. A facsimile or electronic copy of the party's signatures may be treated as an original and will be admissible as evidence of the Lease.

16. **CREDIT INFORMATION:** You authorize us or any of our affiliates to obtain credit bureau reports, and make other credit inquiries that we determine are necessary. On your written request, we will inform you whether we have requested a consumer credit report and the name and address of any consumer credit reporting agency that furnished a report. You acknowledge that without further notice we may use or request additional credit bureau reports to update our information so long as your obligations to us are outstanding.

| Page 2 of 2 | Lessee Initials | LEASE 02 12-7-12 |



**SCHEDULE A TO LEASE AGREEMENT
(EQUIPMENT DESCRIPTION)**

Lease Application No.: **273994**

Location:   6241 Ransom St, Zeeland, MI 49464
        (1) 1119ft VALLEY 8000 SERIES CENTER PIVOT (1) 667 ft VALLEY 8000 SERIES CENTER PIVOT

LESSEE: <u>Boersen Farms Inc</u>

BY: _____

PRINT NAME: __Dennis Boersen__

TITLE: __pwidet__

DATE: __6-18-14__

LEAF CAPITAL FUNDING, LLC

BY: __Sandi Chapdus__

PRINT NAME: _____

TITLE: __VP Operations__

DATE: __6/23/2014__

LEASE Schad A 8-23-12

 **LEAF**

**FINANCE AGREEMENT**

LENDER: LEAF Capital Funding, LLC
2005 Market Street, 14th Floor, Philadelphia, PA 19103

BORROWER: Boersen Farms, Inc.
6241 Ransom St, Zeeland, MI 49464

DATE: May 01, 2015

**PRINCIPAL AMOUNT*: $104,251.41**
Borrower authorizes Lender to fund the Principal Amount directly to vendors and/or other parties in satisfaction of invoices and/or amounts payable by Borrower. Prior to any such funding, Lender may at its discretion require Borrower to confirm in writing or verbally its receipt and acceptance of the product(s) relating to the funding and all invoicing must be acceptable to Lender. Lender's obligation to disburse any portion of the Principal Amount is conditioned upon, (i) no Event of Default having occurred and remaining uncured hereunder, and (ii) Lender's receipt of all documentation deemed necessary by Lender, including but not limited to this Finance Agreement (the "Agreement").

**BASE TERM 60 MONTHS**

**PERIODIC PAYMENTS*** Payments are _X_Monthly ___Quarterly ___Annual
Periodic Payments are monthly unless otherwise specified.

| 60 | PAYMENTS @ | $2,104.07 |
|---|---|---|

*The Principal Amount and the Periodic Payments are subject to adjustment up or down if the amount actually advanced by Lender to or on behalf of Borrower, plus any other obligations of Borrower to Lender that are to be included in the principal amount hereof (i.e. accrued interest under a Progress Payment Agreement), is other than the stated Principal Amount above. Adjustments, if any, shall be confirmed in writing to Borrower and shall preserve Lender's economics. If the adjustment is more than ten percent (10%) of the Principal Amount, upon request, Borrower shall execute and deliver to Lender an amended and restated Finance Agreement which reflects the corrected Principal Amount and the amount of each Periodic Payment.

**AMOUNT DUE AT TIME OF SIGNING THIS AGREEMENT**
(a) Total Advance Payment(s): 2 = $4,368.14 **
(b) A Security Deposit in the amount of: $0.00;
(c) A Documentation Fee in the amount of: $595.00.

Please provide payment in the amount of (a)+(b)+(c)=$4,963.14 when Borrower executes and returns this Agreement.

**If more than one month's payment is required as an Advance Payment, the additional amount will be applied on the commencement date to Periodic Payments in inverse order, starting with the last Periodic Payment.

**1. COMMENCEMENT, DUE DATES, COLLATERAL.** (a) This Agreement shall become binding on Borrower upon its execution thereof and on Lender upon its execution. The term of this Agreement shall commence on the date Lender first disburses all or a portion of the Principal Amount (the "Commencement Date") and the Base Term shall commence on the date associated therewith in the month following the Commencement Date (the "Base Term Commencement Date") and shall continue until all obligations of the Borrower hereunder have been fully performed. The first Periodic Payment shall be due thirty (30) days after the Base Term Commencement Date, or as otherwise invoiced by Lender (the "First Due Date"), with the remaining Periodic Payments due on the same day of each subsequent payment period until paid in full. Lender may charge Borrower a portion of one Periodic Payment for the period from the Commencement Date until the Base Term Commencement Date (such accrued interest, the "Interim Payment"). This Interim Payment shall be due and payable as invoiced by Lender. UPON DISBURSEMENT OF ALL OR A PORTION OF THE PRINCIPAL AMOUNT, BORROWER IRREVOCABLY AUTHORIZES LENDER TO INSERT THE CORRECT PAYMENT DUE DATES and to complete or amend all documents related to this Agreement to reflect the correct due dates of all payments hereunder.

(b) To secure the prompt repayment of (i) the Periodic Payments, Interim Payment and all other amounts due hereunder (the "Payments"), and (ii) all other obligations of Borrower to Lender, whether now existing or hereafter arising (collectively the "Indebtedness") Borrower hereby grants to Lender a first priority security interest in the assets described in Exhibit A attached hereto, whether now owned or hereafter acquired, together with all accessories, accessions, attachments thereto, and all other substitutions, renewals, replacements and improvements and all proceeds of the foregoing, including proceeds in the form of goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations (collectively, "Collateral") Borrower covenants to keep the Collateral free and clear of all liens and encumbrances except for Lender's security interest therein. Borrower authorizes Lender to insert and/or correct serial numbers, VIN numbers and any other relevant information which identifies the Collateral when such information becomes available to Lender.

**2. PAYMENTS.** Borrower's obligation to pay the Payments shall be absolute and unconditional and is not subject to any termination, cancellation, abatement, set-off, defense or counterclaim for any reason whatsoever. If Borrower is more than one person or entity, all of Borrower's obligations hereunder shall be joint and several. All Payments shall be made in Lender at its address specified above (or such other place as Lender may direct in writing) without notice or demand therefor, and all Payments shall be applied first to accrued and unpaid interest and other amounts payable hereunder and the balance to unpaid principal. Interest shall be computed on the basis of a year consisting of twelve months of thirty days each. Until all Indebtedness shall have been paid in full, the security interest in the Collateral granted hereby shall remain in full force and effect. Whenever any Payment is not made by Borrower when due hereunder and such failure continues for five (5) days thereafter, Borrower agrees to pay to Lender an amount equal to seven and one half percent (7.5%) of such delayed Payment, but only to the extent permitted by law. Except as specifically provided herein, Borrower may not prepay any portion of this Agreement. Notwithstanding any other provision in this Agreement, nothing herein shall authorize or permit the payment of interest by Borrower where the same would be prohibited by any applicable law or would violate the applicable usury law. In any such event, this Agreement shall automatically be deemed amended to permit interest charges at an amount equal to, but not greater than, the maximum permitted by law. Unless specifically financed hereunder and included in the Principal Amount, Payments do not include taxes allocable to the Products, as defined in Section 14. Borrower shall file and pay when due any and all taxes and government fees, charges, penalties and interest related to the Products. Any Agreement and the Payments and shall immediately reimburse Lender for all such amounts paid by Lender on behalf of Borrower. Each check by phone payment made by Borrower to Lender shall be subject to a fee of $25.00 and any check returned without payment shall be subject to a $35.00 charge. Borrower agrees to pay Lender a documentation fee equal to the amount specified above, or if not so specified, the greater of either $250.00 or 0.5% of the total of the Principal Amount, which amount shall be invoiced and payable along with the first Payment hereunder.

**3. ASSIGNMENT** BORROWER MAY NOT ASSIGN THIS AGREEMENT OR THE RIGHTS AND/OR OBLIGATIONS HEREUNDER, NOR SHALL THE BORROWER LEASE OR LEND THE COLLATERAL OR SUBMIT IT TO BE USED BY ANYONE OTHER THAN BORROWER'S EMPLOYEES WITHOUT THE PRIOR WRITTEN CONSENT OF LENDER. Lender may at any time assign all or part of any interest in this Agreement and moneys to become due to Lender hereunder and the Collateral. In such an event, all of Lender's rights, powers and privileges contained herein so assigned shall inure to the benefit of and may be exercised by or on behalf of such assignee, but the assignee shall not be liable for or be required to perform any of Lender's obligations to Borrower. The right of the assignee to the payment of assigned Payments and performance of all Borrower's obligations and the right to exercise any and all of Lender's rights hereunder shall not be subject to any defense, counterclaim or set-off which the Borrower may have or assert against the Lender and the Borrower hereby agrees that it will not assert any such defenses, set-offs, counterclaims and claims against the assignee.

**4. EVENTS OF DEFAULT.** The term "Event of Default" shall mean any one or more of the following: (a) Borrower shall fail to make any Payment as it becomes due hereunder and such failure is not cured within 10 days; or (b) Borrower shall fail to perform or observe any of the covenants set forth in Paragraph 9; or (c) Borrower shall fail to perform or observe any other covenant, condition or agreement to be performed or observed by it hereunder and such failure is not cured within 15 days after written notice from Lender to Borrower; or (d) Borrower or any guarantor of Borrower's obligations (each a "Guarantor") shall commence or be subject to any action for relief under any existing or future law of any jurisdiction, relating to bankruptcy, insolvency, reorganization or relief of debtors; or (e) Borrower or any Guarantor shall die, or if an entity, cease to exist, dissolve itself or be terminated; or (f) Any representation or warranty made by Borrower herein or otherwise furnished Lender in connection with this Agreement shall prove at any time to have been untrue or misleading in any material respect; or (g) Borrower or any Guarantor defaults with respect to any other indebtedness for borrowed money, lease, installment sale or guaranty obligation, or fails to comply with any financial covenant related thereto, in each case when any applicable grace period for such obligation has expired and the creditor has commenced to exercise any remedy; or (h) Lender shall reasonably deem itself insecure as a result of a material adverse change in Borrower's financial condition or operations or a change in the ownership of Borrower or any Guarantor; or (i) Borrower or any Guarantor shall fail to maintain in good standing any license necessary to conduct its business.

**5. REMEDIES.** Upon the occurrence of any Event of Default, Lender may declare this Agreement to be in default and exercise any one or more of the following remedies: (a) declare the Termination Amount, as defined in Section 6 hereof to be immediately due and payable without notice or demand, (b) charge Borrower interest on all moneys due Lender at the rate of one and one half percent (1.5%) per month or the maximum rate permitted by law, whichever is less, from the date of default until paid in full (c) require Borrower to assemble all Collateral at Borrower's expense, at a place reasonably designated by Lender, (d) remove any physical obstructions for removal of the Collateral from the place where the Collateral is located and take possession of any or all items of Collateral, without demand or notice, wherever same may be located and (e) without liability to Borrower cause all data and other information stored on hard drives and other media storage devices to be securely overwritten and destroyed beyond recovery (such process being referred to as "Data Erasure") Borrower hereby waives any and all damages occasioned by such retaking, except to the extent that such damage is caused by Lender's gross negligence or willful misconduct. Lender may at its option use, ship store or repair all Collateral so removed and shall sell, lease or otherwise dispose of any

*EXHIBIT B*

such Collateral at a private or public sale. In the event Lender disposes of the Collateral, Lender shall give Borrower credit for any sums received by Lender from the sale or lease of the Collateral after deduction of the expenses of sale or lease. Borrower shall also be liable for and shall pay to Lender (i) all expenses incurred by Lender in connection with the enforcement of any of Lender's remedies, including all expenses of repossessing, storing, shipping, repairing and selling the Collateral, and (ii) Lender's reasonable attorney's fees and expenses, whether such fees and expenses arise in connection with a bankruptcy proceeding of Borrower and/ or any Guarantor, or otherwise. All remedies of Lender hereunder are cumulative, are in addition to any other remedies provided for by law, and may, to the extent permitted by law, be exercised concurrently or separately. The exercise of any one remedy shall not be deemed to be an election of such remedy or to preclude the exercise of any other remedy. No failure on the part of the Lender to exercise and no delay in exercising any right or remedy shall operate as a waiver thereof or modify the terms of this Agreement.

6. TERMINATION AMOUNT. Borrower may not elect to prepay or otherwise terminate this Agreement without the prior written consent of Lender. In the case of a required prepayment pursuant to Sections 5 or 6, Borrower shall pay Lender an amount equal to: (a) all amounts then due, including but not limited to, any due but not yet paid Periodic Payments, Interim Payment, late charges, and other amounts due as of the date of prepayment (the "Current Balance"); plus (b) the remaining Periodic Payments, discounted to the date of prepayment at 3% per annum (collectively, the "Termination Amount").

7. UCC FILINGS AND FINANCIAL STATEMENTS. Borrower hereby irrevocably authorizes Lender and appoints Lender as Borrower's attorney-in-fact, with full power of substitution, to execute and/or file (on behalf of Borrower if necessary) such financing statements, continuations, assignments, amendments and/or other documents which Lender deems reasonably necessary to protect and continue Lender's right, title and interest hereunder and with respect to the Collateral. Borrower agrees to reimburse Lender for Lender's expenses incurred in preparing and filing all financing statements and for Lender's other documentation costs. Borrower agrees to submit audited financial statements or tax returns if its financial statements are unaudited within 120 days from the end of its fiscal year and Borrower warrants to Lender that all financial statements furnished and to be furnished have been and will be prepared in accordance with generally accepted accounting principles, are an accurate reflection of Borrower's financial condition and that there has been no material adverse change in the financial condition of Borrower or any Guarantor since the dates of preparation and submission of the financial statements to Lender. Lender may from time to time require a site inspection to verify the condition and/or existence of the Collateral and Borrower shall reimburse Lender's reasonable costs as invoiced. If Borrower requests administrative services from Lender, Borrower shall pay Lender's then applicable fee, if any, for such services.

8. LOSS OR DAMAGE. Borrower hereby assumes and shall bear the entire risk of loss (including theft and requisition of use) or destruction of or damage to the Collateral from any and every cause whatsoever, whether or not insured. No such loss or damage shall relieve Borrower from any obligation under this Agreement, which shall continue in full force and effect. In the event of damage to or loss or destruction of the Collateral (or any item thereof), Borrower shall promptly notify Lender in writing of such fact and shall, at the option of Lender, (a) place the same in good repair, condition and working order, or (b) replace the Collateral with like collateral acceptable to Lender and grant Lender a first priority security interest in such replacement collateral, or (c) pay to Lender the Termination Amount (or, at Lender's sole option, a prorate portion thereof if less than all of the Collateral is destroyed), whereupon the principal balance of this Agreement shall be reduced accordingly.

9. INSURANCE. Until all of the Indebtedness has been paid in full, Borrower shall obtain, maintain and keep the Collateral insured against all risks of loss or damage from every cause whatsoever, in an amount not less than the Termination Amount. Lender, its successors or assigns shall be the named loss payee with respect to insurance for damage to the Collateral. Lender may require Borrower to obtain, provide evidence of and/or cause Lender to be entitled to the benefits of liability insurance, professional liability insurance, disability insurance and/or key man life insurance. Borrower shall pay all premiums for such insurance and shall deliver to Lender the original policy or policies of insurance, certificates of insurance, or other evidence satisfactory to Lender evidencing the insurance required thereby along with proof satisfactory to Lender, of the payment of the premiums for such insurance policies. The proceeds of all insurance policies required hereunder shall be paid directly to Lender. Borrower hereby irrevocably appoints Lender as Borrower's attorney-in-fact to make claim for, receive payment of, and compromise and endorse all documents, checks or drafts received in payment for loss or damage under any such insurance policy. If Borrower fails to maintain insurance satisfactory to Lender or fails to timely provide proof of such insurance, Lender has the option, but not the obligation, to secure insurance from a carrier of its choosing in such forms and amounts as Lender deems reasonable to protect its interests. If Lender secures insurance on the Collateral, it will not name Borrower as an insured party. Borrower's interests may not be fully protected, and Borrower will reimburse Lender the premium which may be higher than the premium Borrower would pay if Borrower obtained insurance and which may result in a profit to Lender through an investment in reinsurance. If Borrower is current in all of Borrower's obligations under this Agreement at the time of loss, any insurance proceeds received will be applied, at Lender's option to repair or replace the Products, or to pay Lender the Termination Amount.

10. BORROWER'S COVENANTS, REPRESENTATIONS AND WARRANTIES. Borrower hereby represents, warrants and covenants to Lender as of the date hereof (a) Borrower is organized and validly existing under the laws of the state of its

organization, with adequate power and capacity to enter into this Agreement and any other documents required to be delivered in connection herewith (hereinafter "Documents") and Borrower is duly qualified and licensed to do business wherever necessary to carry on its present business, including all states where the Collateral is to be located, (b) the Documents have been duly authorized, executed and delivered by Borrower and constitute valid, legal and binding agreements, enforceable in accordance with their terms; (c) no approval, consent or withholding of objections is required from any federal, state or local governmental authority or instrumentality with respect to the entry into or performance by Borrower of the Documents, except such as have already been obtained; (d) the entry into and performance by Borrower of the Documents will not (i) violate any judgment, order, law or regulation applicable to Borrower or (ii) result in any breach of, constitute a default under or result in the creation of any lien, charge, security interest or other encumbrance upon any item of Collateral pursuant to any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument to which Borrower is a party, (e) there are no suits or proceedings pending or threatened in court or before any regulatory commission, board or other administrative governmental agency against or affecting Borrower, which may have a material adverse effect on the ability of Borrower to fulfill its obligations hereunder; (f) Borrower shall not: (i) enter into any transaction of merger or consolidation in which it is not the surviving entity or sell, transfer or otherwise dispose of all or substantially all of its assets or (ii) change its name or (iii) permit any change of more than twenty percent (20%) in the ownership of the Borrower.

11. MISCELLANEOUS. Borrower agrees to execute or obtain and deliver to Lender at Lender's request such additional documents as Lender may reasonably deem necessary to protect Lender's interest in the Collateral and this Agreement. Any Security Deposit shall be held by and applied by Lender at its discretion to cure any Event of Default hereunder. Upon the satisfaction in full of all of the Indebtedness, Lender shall return any unapplied portion of the Security Deposit without interest. A facsimile copy of this Agreement with facsimile signatures may be treated as an original and will be admissible as evidence of this Agreement.

12. CHOICE OF LAW. This Agreement shall be binding and effective when accepted by Lender, shall be deemed to have been made in Pennsylvania and, except for local filing requirements, shall be governed by and construed in accordance with the laws (except for the laws relating to conflict of law) of the Commonwealth of Pennsylvania. Borrower hereby consents to and agrees that personal jurisdiction over Borrower and subject matter jurisdiction over the Collateral shall lie with the courts of the Commonwealth of Pennsylvania or the Eastern Federal District Court for the Eastern District of Pennsylvania. TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HEREBY WAIVE TRIAL BY JURY IN ANY ACTION BROUGHT IN CONNECTION WITH THIS AGREEMENT.

13. INDEMNITY. Borrower agrees to indemnify and hold harmless Lender, and its agents, employees and assigns from and against any liability, damage or loss of any nature (including attorneys' fees) arising out of, or resulting from this Agreement and claims of any nature arising out of the selection, purchase, delivery, acceptance, rejection, use, operation, ownership, return or disposition of the Collateral, or Data Erasure.

14. WAIVERS. Borrower hereby waives against Lender as a precondition for payment hereunder each of the following: any demand for payment, filing of claims with any court, and proceeding to enforce provisions of the Indebtedness or any guaranty thereof against any other party or collateral and all protests, presentment, notice or demand whatsoever. Borrower shall not be discharged from its obligations hereunder or with respect to the Indebtedness except by payment in full of all amounts due and to become due and the performance of all other obligations with respect thereto. Borrower hereby acknowledges and agrees that with respect to any products being financed with the proceeds of the Principal Amount hereof ("Products"), Borrower has selected the Products and the vendor thereof. LENDER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND; LENDER IS NOT RESPONSIBLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES OR ANY INJURY TO BORROWER OR ANY THIRD PARTY OR PROPERTY CAUSED BY THE PRODUCTS. Borrower shall continue to pay and perform its obligations hereunder notwithstanding any breach by the manufacturer or supplier of the Products.

15. ENTIRE AGREEMENT, NON-WAIVER, SEVERABILITY. This Agreement contains the entire agreement and understanding between Borrower and Lender or relating to the subject matter hereof. No agreements or understandings shall be binding on the parties hereto unless set forth in writing and signed by the parties. Time is of the essence in this Agreement. Any provision of this Agreement held unenforceable in any jurisdiction shall be ineffective to the extent of such unenforceability without invalidating the remaining provisions of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their authorized representatives.

BORROWER Boersen Farms, Inc.

BY _____

PRINT NAME Dennis Boersen

TITLE President

E-MAIL ADDRESS _____

TAX ID NUMBER _____

LEAF CAPITAL FUNDING, LLC

BY _____

PRINT NAME _____

TITLE VP Operations

F10 10-28-2014 App=310903

I HEREBY CERTIFY THAT THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL DOCUMENT

EXHIBIT A

TO

**FINANCE AGREEMENT**

**Collateral Description**

Location:  6241 Ransom St, Zeeland, MI 49464

Please refer to Michigan Valley Irrigation Invoice Number 57043 dated April 29, 2015, one page and Invoice Number 57044 dated April 29, 2015, one page.

The Collateral includes, but is not limited to the foregoing.

Borrower: <u>Boersen Farms, Inc.</u>

BY: _____

PRINT NAME: <u>Dennis Boersen</u>

TITLE: <u>President</u>   5 - 5 - 15

DATE: _____

LEAF Capital Funding, LLC

BY: _____

PRINT NAME: _____

TITLE: _____ VP Operations

DATE: _____ 5/14/2015

**Michigan Valley Irrigation**
4802 W. Caro Road
Vassar, MI 48768

Voice:  989-873-6741
Fax:  989-873-8863

# INVOICE

Invoice Number:  57043
Invoice Date:  Apr 29, 2015
Page:  1

| BOERSON FARMS INC 8241 RANSOM STREET ZEELAND, MI 49464 | BOERSON FARMS INC 8241 RANSOM STREET ZEELAND, MI 49464 |
|---|---|

| BOERSONAG | 122 North of Bins | Net 30 Days | |
|---|---|---|---|
| 00GRAJ | Best Way | | 5/29/15 |

| | | | | |
|---|---|---|---|---|
| 1.00 | | 954 FI Valley 8000 Series Center Pivot | 65,327.00 | 65,327.00 |
| | | SER: 11149878 | | |
| 1.00 | | Less Additional Discount | 11,105.59 | -11,105.59 |
| 1.00 | FREIGHT | UPS / FREIGHT CHARGE | 1,800.00 | 1,800.00 |
| 1.00 | | Setup | 5,724.00 | 5,724.00 |
| | | CONSISTING OF: 6 5/8 PIVOT POINT, 5 - | | |
| | | 180 SPANS 6 5/8 PIPE, 54 OVERHANG, | | |
| | | PIVOT LADDER,  14.9 X 24 TIRES, HIGH | | |
| | | SPEED CENTERDRIVES, STANDARD | | |
| | | VALLEY GEARBOXES, STANDARD | | |
| | | ALIGNMENT, 5 HP BOOSTER PUMP, | | |
| | | KOMET END GUN VALVE, CLASSIC | | |
| | | PLUS PANEL WITH AUTO REVERSE, | | |
| | | LOW PRESSURE SHUTOFF, | | |
| | | STOP-IN-SLOT END GUN CONTROL, 11 | | |
| | | COND AEROMOTIVE COLLECTOR RING, | | |
| | | LIGHTNING ARRESTOR, DIRTY WATER | | |
| | | FILTER ASSY, RUNNING LIGHT, 10 GA | | |
| | | SPAN CABLE, KOMET SR101 END GUN, | | |
| | | POLY-HOSE DROPS WITH I-WOB | | |
| | | SPRINKLERS 700 GPM @ 45 PSI. | | |

| | | |
|---|---|---|
| Subtotal | | 61,745.41 |
| Sales Tax | | |
| Total Invoice Amount | | 61,745.41 |
| Payment/Credit Applied | | |

Check/Credit Memo No:

Overdue invoices are subject to late charges.

**Michigan Valley Irrigation**
4802 W. Caro Road
Vassar, MI 48768

Voice: 989-673-6741
Fax: 989-673-8883

# INVOICE

Invoice Number: 57044
Invoice Date: Apr 29, 2015
Page: 1

BOERSON FARMS INC
6241 RANSOM STREET
ZEELAND, MI 49464

BOERSON FARMS INC
6241 RANSOM STREET
ZEELAND, MI 49484

| BOERSONAG | WILDWOOD/PATTERSON | Net 30 Days | |
|---|---|---|---|
| 00GRAJ | Best Way | | 5/29/15 |

| | | | | |
|---|---|---|---|---|
| 1.00 | | 632 FT VALLEY 8000 SERIES CENTER PIVOT SER:11149876 | 46,959.00 | 46,959.00 |
| 1.00 | | LESS ADDITIONAL DISCOUNT | 7,813.00 | -7,813.00 |
| 1.00 | FREIGHT | UPS / FREIGHT CHARGE | 1,200.00 | 1,200.00 |
| 1.00 | | SETUP | 3,160.00 | 3,160.00 |
| | | CONSISTING OF: 8 5/8 PIVOT, 2 - 185 SPANS, 1-180 SPAN 6 5/8 PIPES, 82 OVERHANG, LADDER, 14.9 X 24 TIRES, HIGH SPEED MOTORS, STANDARD VALLEY GEARBOXES, 10 GA SPAN CABLE, RUN LIGHT, 5 HP BOOSTER PUMP, KOMET END GUN VALVE, CLASSIC PLUS PANEL WITH AUTO REVERSE, LOW PRESSURE SHUTOFF, STOP-IN-SLOT END GUN SHUTOFF, 11 COND AEROMOTIVE COLLECTOR RING, LIGHTNING ARRESTOR, KOMET SR101 END GUN, POLY-HOSE DROPS WITH I-WOB SPRINKLERS, 550 GPM @ 45 PSI. | | |

| Subtotal | 42,506.00 |
|---|---|
| Sales Tax | |
| Total Invoice Amount | 42,506.00 |
| Payment/Credit Applied | |

Check/Credit Memo No:

Overdue invoices are subject to late charges.

 **LEAF**

# FINANCE AGREEMENT

LENDER: LEAF Capital Funding, LLC
2005 Market Street, 14th Floor, Philadelphia, PA 19103

BORROWER: Boersen Farms, Inc.
6241 Ransom St, Zeeland, MI 49464

DATE: April 30, 2015

PRINCIPAL AMOUNT*: $198,458.00
Borrower authorizes Lender to fund the Principal Amount directly to vendors and/or other parties in satisfaction of invoices and/or amounts payable by Borrower. Prior to any such funding, Lender may at its discretion require Borrower to confirm in writing or verbally its receipt and acceptance of the product(s) relating to the funding and all invoicing must be acceptable to Lender. Lender's obligation to disburse any portion of the Principal Amount is conditioned upon: (i) no Event of Default having occurred and remaining uncured hereunder, and (ii) Lender's receipt of all documentation deemed necessary by Lender, including but not limited to this Finance Agreement (the "Agreement").

BASE TERM: 60 MONTHS

PERIODIC PAYMENTS*: Payments are: X Monthly ___Quarterly ___Annual
Periodic Payments are monthly unless otherwise specified.

| $0 | PAYMENTS @ | $4,157.70 |
|---|---|---|

*The Principal Amount and the Periodic Payments are subject to adjustment up or down if the amount actually advanced by Lender to or on behalf of Borrower, plus any other obligations of Borrower to Lender that are to be included in the principal amount hereof (i.e. accrued interest under a Progress Payment Agreement), is other than the stated Principal Amount above. Adjustments, if any, shall be contained in writing to Borrower and shall preserve Lender's economics. If the adjustment is more than ten percent (10%) of the Principal Amount, upon request, Borrower shall execute and deliver to Lender an amended and restated Finance Agreement which reflects the corrected Principal Amount and the amount of each Periodic Payment.

AMOUNT DUE AT TIME OF SIGNING THIS AGREEMENT.

(a) Total Advance Payment(s): 2 = $8,315.40;**

(b) A Security Deposit in the amount of: $0.00;

(c) A Documentation Fee in the amount of: $195.00.

Please provide payment in the amount of (a)+(b)+(c)=$8,510.40 when Borrower executes and returns this Agreement.

**If more than one month's payment is required as an Advance Payment, the additional amount will be applied on the commencement date to Periodic Payments in inverse order, starting with the last Periodic Payment.

**1. COMMENCEMENT, DUE DATES, COLLATERAL.** (a) This Agreement shall become binding on Borrower upon its execution thereof and on Lender upon its execution. The term of this Agreement shall commence on the date Lender first disburses all or a portion of the Principal Amount (the "Commencement Date") and the Base Term shall commence on that date specified by Lender in the month following the Commencement Date (the "Base Term Commencement Date") and shall continue until all obligations of the Borrower hereunder have been fully performed. The first Periodic Payment shall be due thirty (30) days after the Base Term Commencement Date, or as otherwise invoiced by Lender (the "First Due Date"), with the remaining Periodic Payments due on the same day of each subsequent payment period until paid in full. Lender may charge Borrower a portion of one Periodic Payment for the period from the Commencement Date until the Base Term Commencement Date (such accrued interest, the "Interim Payment"). The Interim Payment shall be due and payable as invoiced by Lender. UPON DISBURSEMENT OF ALL OR A PORTION OF THE PRINCIPAL AMOUNT, BORROWER IRREVOCABLY AUTHORIZES LENDER TO INSERT THE CORRECT PAYMENT DUE DATES and to complete or amend all documents related to this Agreement to reflect the correct due dates of all payments hereunder.

(b) To secure the prompt repayment of (i) the Periodic Payments, Interim Payment and all other amounts due hereunder (the "Payments"), and (ii) all other obligations of Borrower to Lender, whether now existing or hereafter arising (collectively, the "Indebtedness"), Borrower hereby grants to Lender a first priority security interest in the assets described in Exhibit A attached hereto, whether now owned or hereafter acquired, together with all accessories, accessions, attachments thereto, and all other substitutions, renewals, replacements and improvements and all proceeds of the foregoing, including proceeds in the form of goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations (collectively, "Collateral"). Borrower covenants to keep the Collateral free and clear of all liens and encumbrances, except for Lender's security interest therein. Borrower authorizes Lender to insert and/or correct serial numbers, VIN numbers and any other relevant information which identifies the Collateral when such information becomes available to Lender.

**2. PAYMENTS.** Borrower's obligation to pay the Payments shall be absolute and unconditional and is not subject to any termination, cancellation, abatement, set-off, defense or counterclaim for any reason whatsoever. If Borrower is more than one person or entity, all of Borrower's obligations hereunder shall be joint and several. All Payments shall be made to Lender at its address specified above (or such other place as Lender may direct in writing) without notice or demand therefor, and all Payments shall be applied first to accrued and unpaid interest and other amounts payable hereunder and the balance to unpaid principal. Interest shall be computed on the basis of a year consisting of twelve months of thirty days each. Until all Indebtedness shall have been paid in full, the security interest in the Collateral granted hereby shall remain in full force and effect. Whenever any Payment is not made by Borrower when due hereunder and such failure continues for five (5) days thereafter, Borrower agrees to pay to Lender an amount equal to seven and one half percent (7.5%) of such delayed Payment, but only to the extent permitted by law. Except as specifically provided herein, Borrower may not prepay any portion of this Agreement. Notwithstanding any other provision in this Agreement, nothing herein shall authorize or permit the payment of interest by Borrower where the same would be prohibited by any applicable law or would violate the applicable usury law. In any such event, this Agreement shall automatically be deemed amended to permit interest charges at an amount equal to, but not greater than, the maximum permitted by law. Unless specifically financed hereunder and included in the Principal Amount, Payments do not include taxes allocable to the Products, as defined in Section 14. Borrower shall file and pay when due any and all taxes and government fees, charges, penalties and interest related to the Products, this Agreement and the Payments and shall immediately reimburse Lender for all such amounts paid by Lender on behalf of Borrower. Each check by phone payment made by Borrower to Lender shall be subject to a fee of $25.00 and any check returned without payment shall be subject to a $35.00 charge. Borrower agrees to pay Lender a documentation fee equal to the amount specified above, or if not so specified, the greater of either $250.00 or 0.5% of the total of the Principal Amount, which amount shall be invoiced and payable along with the first Payment hereunder.

**3. ASSIGNMENT.** BORROWER MAY NOT ASSIGN THIS AGREEMENT OR THE RIGHTS AND/OR OBLIGATIONS HEREUNDER, NOR SHALL THE BORROWER LEASE OR LEND THE COLLATERAL OR SUBMIT IT TO BE USED BY ANYONE OTHER THAN BORROWER'S EMPLOYEES WITHOUT THE PRIOR WRITTEN CONSENT OF LENDER. Lender may at any time assign all or part of any interest in this Agreement and moneys to become due to Lender hereunder and the Collateral. In such an event, all of Lender's rights, powers and privileges contained herein so assigned shall inure to the benefit of and may be exercised by or on behalf of such assignee, but the assignee shall not be liable for or be required to perform any of Lender's obligations to Borrower. The right of the assignee to the payment of assigned Payments and performance of all Borrower's obligations and the right to exercise any and all of Lender's rights hereunder shall not be subject to any defense, counterclaim or set-off which the Borrower may have or assert against the Lender, and the Borrower hereby agrees that it will not assert any such defenses, set-offs, counterclaims and claims against the assignee.

**4. EVENTS OF DEFAULT.** The term "Event of Default" shall mean any one or more of the following: (a) Borrower shall fail to make any Payment as it becomes due hereunder and such failure is not cured within 10 days; or (b) Borrower shall fail to perform or observe any of the covenants set forth in Paragraph 9; or (c) Borrower shall fail to perform or observe any other covenant, condition or agreement to be performed or observed by it hereunder and such failure is not cured within 15 days after written notice from Lender to Borrower; or (d) Borrower or any guarantor of Borrower's obligations (each a "Guarantor") shall commence or be subject to any action for relief under any existing or future law of any jurisdiction, relating to bankruptcy, insolvency, reorganization or relief of debtors; or (e) Borrower or any Guarantor shall die, or if an entity, cease to exist, dissolve itself or be terminated; or (f) Any representation or warranty made by Borrower herein or otherwise furnished Lender in connection with this Agreement shall prove at any time to have been untrue or misleading in any material respect; or (g) Borrower or any Guarantor defaults with respect to any other indebtedness for borrowed money, lease, installment sale or guaranty obligation, or fails to comply with any financial covenant related thereto, in such case when any applicable grace period for such obligation has expired and the creditor has commenced to exercise any remedy; or (h) Lender shall reasonably deem itself insecure as a result of a material adverse change in Borrower's financial condition or operations or a change in the ownership of Borrower or any Guarantor; or (i) Borrower or any Guarantor shall fail to maintain in good standing any license necessary to conduct its business.

**5. REMEDIES.** Upon the occurrence of any Event of Default, Lender may declare this Agreement to be in default and exercise any one or more of the following remedies: (a) declare the Termination Amount, as defined in Section 6 hereof, to be immediately due and payable without notice or demand, (b) charge Borrower interest on all moneys due Lender at the rate of one and one half percent (1.5%) per month or the maximum rate permitted by law, whichever is less, from the date of default until paid in full, (c) require Borrower to assemble all Collateral at Borrower's expense, at a place reasonably designated by Lender, (d) remove any physical obstructions for removal of the Collateral from the place where the Collateral is located and take possession of any or all items of Collateral, without demand or notice, wherever same may be located, and (e) without liability to Borrower, cause all data and other information stored on hard drives and other media storage devices to be securely overwritten and destroyed beyond recovery (such process being referred to as "Data Erasure"). Borrower hereby waives any and all damages occasioned by such retaking, except to the extent that such damage is caused by Lender's gross negligence or willful misconduct. Lender may, at its option, use, ship, store or repair all Collateral so removed and shall sell, lease or otherwise dispose of any

*EXHIBIT C*

such Collateral at a private or public sale. In the event Lender disposes of the Collateral, Lender shall give Borrower credit for any sums received by Lender from the sale or lease of the Collateral after deduction of the expenses of sale or lease. Borrower shall also be liable for and shall pay to Lender (i) all expenses incurred by Lender in connection with the enforcement of any of Lender's remedies, including all expenses of repossessing, storing, shipping, repairing and selling the Collateral, and (ii) Lender's reasonable attorney's fees and expenses, whether such fees and expenses arise in connection with a bankruptcy proceeding of Borrower and/ or any Guarantor, or otherwise. All remedies of Lender hereunder are cumulative, are in addition to any other remedies provided for by law, and may, to the extent permitted by law, be exercised concurrently or separately. The exercise of any one remedy shall not be deemed to be an election of such remedy or to preclude the exercise of any other remedy. No failure on the part of the Lender to exercise and no delay in exercising any right or remedy shall operate as a waiver thereof or modify the terms of this Agreement.

6. TERMINATION AMOUNT. Borrower may not elect to prepay or otherwise terminate this Agreement without the prior written consent of Lender. In the case of a required prepayment pursuant to Sections 8 or 9, Borrower shall pay Lender an amount equal to: (a) all amounts then due, including but not limited to, any due but not yet paid Periodic Payments, interim Payment, late charges, and other amounts due as of the date of prepayment (the "Current Balance"); plus (b) the remaining Periodic Payments, discounted to the date of prepayment at 3% per annum (collectively, the "Termination Amount").

7. UCC FILINGS AND FINANCIAL STATEMENTS. Borrower hereby irrevocably authorizes Lender and appoints Lender as Borrower's attorney-in-fact, with full power of substitution, to execute and/or file (on behalf of Borrower if necessary) such financing statements, continuations, assignments, amendments and/or other documents which Lender deems reasonably necessary to protect and continue Lender's right, title and interest hereunder and with respect to the Collateral. Borrower agrees to reimburse Lender for Lender's expenses incurred in preparing and filing all financing statements and for Lender's other documentation costs. Borrower agrees to submit audited financial statements or tax returns if its financial statements are unaudited within 120 days from the end of its fiscal year and Borrower warrants to Lender that all financial statements furnished and to be furnished have been and will be prepared in accordance with generally accepted accounting principles, are an accurate reflection of Borrower's financial condition and that there has been no material adverse change in the financial condition of Borrower or any Guarantor since the dates of preparation and submission of the financial statements to Lender. Lender may from time to time require a site inspection to verify the condition and/or existence of the Collateral and Borrower shall reimburse Lender's reasonable costs as invoiced. If Borrower requests administrative services from Lender, Borrower shall pay Lender's then applicable fee, if any, for such services.

8. LOSS OR DAMAGE. Borrower hereby assumes and shall bear the entire risk of loss (including theft and requisition of use) or destruction of or damage to the Collateral from any and every cause whatsoever, whether or not insured. No such loss or damage shall relieve Borrower from any obligation under this Agreement, which shall continue in full force and effect. In the event of damage to or loss or destruction of the Collateral (or any item thereof), Borrower shall promptly notify Lender in writing of such fact and shall, at the option of Lender; (a) place the same in good repair, condition and working order, or (b) replace the Collateral with like collateral acceptable to Lender and grant Lender a first priority security interest in such replacement collateral, or (c) pay to Lender the Termination Amount (or, at Lender's sole option, a prorata portion thereof if less than all of the Collateral is destroyed), whereupon the principal balance of this Agreement shall be reduced accordingly.

9. INSURANCE. Until all of the Indebtedness has been paid in full, Borrower shall obtain, maintain and keep the Collateral insured against all risks of loss or damage from every cause whatsoever, in an amount not less than the Termination Amount. Lender, its successors or assigns, shall be the named loss payee with respect to insurance for damage to the Collateral. Lender may require Borrower to obtain, provide evidence of and/or cause Lender to be entitled to the benefits of liability insurance, professional liability insurance, disability insurance and/or key man life insurance. Borrower shall pay all premiums for such insurance and shall deliver to Lender the original policy or policies of insurance, certificates of insurance, or other evidence satisfactory to Lender evidencing the insurance required thereby, along with proof, satisfactory to Lender, of the payment of the premiums for such insurance policies. The proceeds of all insurance policies required hereunder shall be paid directly to Lender. Borrower hereby irrevocably appoints Lender as Borrower's attorney-in-fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment for loss or damage under any such insurance policy. If Borrower fails to maintain insurance satisfactory to Lender or fails to timely provide proof of such insurance, Lender has the option, but not the obligation, to secure insurance from a carrier of its choosing in such forms and amounts as Lender deems reasonable to protect its interests. If Lender secures insurance on the Collateral, it will not name Borrower as an insured party, Borrower's interests may not be fully protected, and Borrower will reimburse Lender the premium which may be higher than the premium Borrower would pay if Borrower obtained insurance, and which may result in a profit to Lender through an investment in reinsurance. If Borrower is current in all of Borrower's obligations under this Agreement at the time of loss, any insurance proceeds received will be applied, at Lender's option, to repair or replace the Products, or to pay Lender the Termination Amount.

10. BORROWER'S COVENANTS, REPRESENTATIONS AND WARRANTIES. Borrower hereby represents, warrants and covenants to Lender as of the date hereof: (a) Borrower is organized and validly existing under the laws of the state of its

organization, with adequate power and capacity to enter into this Agreement and any other documents required to be delivered in connection herewith (hereinafter "Documents") and Borrower is duly qualified and licensed to do business wherever necessary to carry on its present business, including all states where the Collateral is to be located; (b) the Documents have been duly authorized, executed and delivered by Borrower and constitute valid, legal and binding agreements, enforceable in accordance with their terms; (c) no approval, consent or withholding of objections is required from any federal, state or local governmental authority or instrumentality with respect to the entry into or performance by Borrower of the Documents, except such as have already been obtained; (d) the entry into and performance by Borrower of the Documents will not (i) violate any judgment, order, law or regulation applicable to Borrower or (ii) result in any breach of, constitute a default under or result in the creation of any lien, charge, security interest or other encumbrance upon any item of Collateral pursuant to any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument to which Borrower is a party; (e) there are no suits or proceedings pending or threatened in court or before any regulatory commission, board or other administrative governmental agency against or affecting Borrower, which may have a material adverse effect on the ability of Borrower to fulfill its obligations hereunder; (f) Borrower shall not: (i) enter into any transaction of merger or consolidation in which it is not the surviving entity or sell, transfer or otherwise dispose of all or substantially all of its assets or (ii) change its name or (iii) permit any change of more than twenty percent (20%) in the ownership of the Borrower.

11. MISCELLANEOUS. Borrower agrees to execute or obtain and deliver to Lender at Lender's request such additional documents as Lender may reasonably deem necessary to protect Lender's interest in the Collateral and this Agreement. Any Security Deposit shall be held by and applied by Lender at its discretion to cure any Event of Default hereunder. Upon the satisfaction in full of all of the Indebtedness, Lender shall return any unapplied portion of the Security Deposit without interest. A facsimile copy of this Agreement with facsimile signatures may be treated as an original and will be admissible as evidence of this Agreement.

12. CHOICE OF LAW. This Agreement shall be binding and effective when accepted by Lender, shall be deemed to have been made in Pennsylvania and, except for local filing requirements, shall be governed by and construed in accordance with the laws (except for the laws relating to conflict of law) of the Commonwealth of Pennsylvania. Borrower hereby consents to and agrees that personal jurisdiction over Borrower and subject matter jurisdiction over the Collateral shall be with the courts of the Commonwealth of Pennsylvania or the Eastern Federal District Court for the Eastern District of Pennsylvania. TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HEREBY WAIVE TRIAL BY JURY IN ANY ACTION BROUGHT IN CONNECTION WITH THIS AGREEMENT.

13. INDEMNITY. Borrower agrees to indemnify and hold harmless Lender, and its agents, employees and assigns from and against any liability, damage or loss of any nature (including attorneys' fees) arising out of, or resulting from this Agreement and claims of any nature arising out of the selection, purchase, delivery, acceptance, rejection, use, operation, ownership, return or disposition of the Collateral, or Data Erasure.

14. WAIVERS. Borrower hereby waives against Lender as a precondition for payment hereunder each of the following: any demand for payment, filing of claims with any court, and proceeding to enforce provisions of the Indebtedness or any guaranty thereof against any other party or collateral and all protests, presentment, notice or demand whatsoever. Borrower shall not be discharged from its obligations hereunder or with respect to the Indebtedness except by payment in full of all amounts due and to become due and the performance of all other obligations with respect thereto. Borrower hereby acknowledges and agrees that with respect to any products being financed with the proceeds of the Principal Amount hereof ("Products"). Borrower has selected the Products and the vendor thereof; LENDER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND, LENDER IS NOT RESPONSIBLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES OR ANY INJURY TO BORROWER OR ANY THIRD PARTY OR PROPERTY CAUSED BY THE PRODUCTS. Borrower shall continue to pay and perform its obligations hereunder notwithstanding any breach by the manufacturer or supplier of the Products.

15. ENTIRE AGREEMENT; NON-WAIVER; SEVERABILITY. This Agreement contains the entire agreement and understanding between Borrower and Lender or relating to the subject matter hereof. No agreements or understandings shall be binding on the parties herein unless set forth in writing and signed by the parties. Time is of the essence in this Agreement. Any provision of this Agreement held unenforceable in any jurisdiction shall be ineffective to the extent of such unenforceability without invalidating the remaining provisions of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their authorized representatives.

BORROWER: Boersen Farms, Inc.
BY: _____
PRINT NAME: Dennis Boersen
TITLE: President
E-MAIL ADDRESS: _____
TAX ID NUMBER: _____

LEAF CAPITAL FUNDING, LLC
BY: _____
PRINT NAME: _____
TITLE: VP Operations



**EXHIBIT A**
**TO**
**FINANCE AGREEMENT**

**Collateral Description**

**Location:** 6241 Ransom St, Zeeland, MI 49464

Please refer to Michigan Valley Irrigation Invoices as follows: Invoice Number 56727 dated May 7, 2015, one page; Invoice Number 56728, dated May 7, 2015, one page; Invoice Number 56731 dated May 7, 2015, one page; Invoice Number 56732 dated May 7, 2015, one page

The Collateral includes, but is not limited to the foregoing.

Borrower: <u>Boersen Farms, Inc.</u>

BY: _____

PRINT NAME: <u>Dennis Boersen</u>

TITLE: <u>President</u>

DATE: _____5-12-15_____

LEAF Capital Funding, LLC

BY: _____

PRINT NAME: _____

TITLE: _____VP Operations_____

5/13/2015

DATE: _____

F10 10-28-2014 App=293036

**Michigan Valley Irrigation**
4802 W. Caro Road
Vassar, MI 48768

# INVOICE

Invoice Number: 56727
Invoice Date: May 7, 2015
Page: 1

*Duplicate*

Voice: 989-673-6741
Fax: 989-673-8863

| Bill To: | Ship to: |
|---|---|
| BOERSON FARMS INC<br>6241 RANSOM STREET<br>ZEELAND, MI 49464 | BOERSON FARMS INC<br>6241 RANSOM STREET<br>ZEELAND, MI 49464 |

| Customer ID | Customer PO | Payment Terms |
|---|---|---|
| BOERSONAG | 96/Berry, far west | Net 30 Days |

| Sales Rep ID | Shipping Method | Ship Date | Due Date |
|---|---|---|---|
| | Best Way | | 6/6/15 |

| Quantity | Item | Description | Unit Price | Amount |
|---|---|---|---|---|
| 1.00 | | 789 ft VALLEY 8000 SERIES CENTER PIVOT | 56,753.00 | 56,753.00 |
| -1.00 | | LESS DISCOUNT | 9,649.00 | -9,649.00 |
| 1.00 | | FREIGHT CHG | 1,300.00 | 1,300.00 |
| 1.00 | | LABOR FEE | 4,070.00 | 4,070.00 |
| | | * CONSISTING OF: 8 5/8" PIVOT POINT, THREE 180' SPANS, ONE 185' SPAN, ONE 64' OVERHANG, LADDER, HIGH FLOAT TIRES, HIGH SPEED MOTORS, STD GEARBOXES, STD ALIGNMENT, 10 GA SPAN CABLES, RUN LIGHT, EOFS/ARS, 2 HP BOOSTER PUMP w/VALVE, CLASSIC PLUS PANEL, COLLECTOR RING, LIGHTNING ARRESTOR, DIRTY WATER FILTER, KOMET SR101 END GUN, I-WOB SPRINKLERS w/POLYHOSE DROPS & REGS, LESS ALL DISCOUNTS. | | |

| | | |
|---|---|---|
| Subtotal | | 52,474.00 |
| Sales Tax | | |
| Total Invoice Amount | | 52,474.00 |
| Payment/Credit Applied | | |
| TOTAL | | 52,474.00 |

Check/Credit Memo No:

Overdue invoices are subject to late charges.

# Michigan Valley Irrigation
4802 W. Caro Road
Vassar, MI 48768

# INVOICE

Invoice Number: 56728
Invoice Date: May 7, 2015
Page: 1
*Duplicate*

Voice: 989-673-6741
Fax: 989-673-8863

| Bill To: | Ship To: |
|---|---|
| BOERSON FARMS INC<br>6241 RANSOM STREET<br>ZEELAND, MI 49464 | BOERSON FARMS INC<br>6241 RANSOM STREET<br>ZEELAND, MI 49464 |

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| BOERSONAG | 96/Berry, west middl | Net 30 Days | |
| Sales Rep ID | Shipping Method | Ship Date | Due Date |
| | Best Way | | 6/6/15 |

| Quantity | Item | Description | Unit Price | Amount |
|---|---|---|---|---|
| 1.00 | | 599 ft VALLEY 8000 SERIES CENTER PIVOT | 43,425.00 | 43,425.00 |
| -1.00 | | LESS DISCOUNT | 7,382.00 | -7,382.00 |
| 1.00 | | FREIGHT CHG | 1,200.00 | 1,200.00 |
| 1.00 | | LABOR FEE | 2,995.00 | 2,995.00 |
| | | * CONSISTING OF: 8 5/8" PIVOT POINT, ONE 185' SPAN, TWO 180' SPANS, ONE 54' OVERHANG, LADDER, HIGH FLOAT TIRES, HIGH SPEED MOTORS, STD GEARBOXES, STD ALIGNMENT, 10 GA SPAN CABLES, RUN LIGHT, 2 HP BOOSTER PUMP w/VALVE, CLASSIC PLUS PANEL, COLLECTOR RING, LIGHTNING ARRESTOR, DIRTY WATER FILTER, KOMET SR101 END GUN, I-WOB SPRINKLERS w/POLYHOSE DROPS & REGS, LESS ALL DISCOUNTS. | | |

| | | |
|---|---|---|
| | Subtotal | 40,238.00 |
| | Sales Tax | |
| | Total Invoice Amount | 40,238.00 |
| Check/Credit Memo No: | Payment/Credit Applied | |
| | TOTAL | 40,238.00 |

Overdue invoices are subject to late charges.

**Michigan Valley Irrigation**
4802 W. Caro Road
Vassar, MI 48768

Voice:   989-673-6741
Fax:      989-673-8863

# INVOICE

Invoice Number:   56731
Invoice Date:      May 7, 2015
Page:              1
*Duplicate*

| Bill To: | Ship to: |
|---|---|
| BOERSON FARMS INC<br>6241 RANSOM STREET<br>ZEELAND, MI 49464 | BOERSON FARMS INC<br>6241 RANSOM STREET<br>ZEELAND, MI 49464 |

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| BOERSONAG | Jr Stealy, west | Net 30 Days | |

| Sales Rep ID | Shipping Method | Ship Date | Due Date |
|---|---|---|---|
| | Best Way | | 6/6/15 |

| Quantity | Item | Description | Unit Price | Amount |
|---|---|---|---|---|
| 1.00 | | 692 ft VALLEY 8000 SERIES CENTER PIVOT | 55,575.00 | 55,575.00 |
| -1.00 | | LESS DISCOUNT | 9,447.00 | -9,447.00 |
| 1.00 | | FREIGHT CHG | 1,400.00 | 1,400.00 |
| 1.00 | | LABOR FEE | 3,645.00 | 3,645.00 |
| | | * CONSISTING OF: 8 5/8" PIVOT POINT, TWO 185' SPANS, ONE 135' HI PROFILE SPAN, ONE 160' SPAN, ONE 27' OVERHANG, FLEX, LADDER, HIGH FLOAT TIRES, HIGH SPEED MOTORS, STD GEARBOXES, STD ALIGNMENT, 10 GA SPAN CABLES, RUN LIGHT, EOFS/ARS, 5 HP BOOSTER PUMP w/VALVE & FUSING, CLASSIC PLUS PANEL, COLLECTOR RING, LIGHTNING ARRESTOR, DIRTY WATER FILTER, KOMET SR101 END GUN, I-WOB SPRINKLERS w/POLYHOSE DROPS & REGS, LESS ALL DISCOUNTS. | | |

Check/Credit Memo No:

| | | |
|---|---|---|
| Subtotal | | 51,173.00 |
| Sales Tax | | |
| Total Invoice Amount | | 51,173.00 |
| Payment/Credit Applied | | |
| TOTAL | | 51,173.00 |

Overdue invoices are subject to late charges.

## Michigan Valley Irrigation
4802 W. Caro Road
Vassar, MI 48768

Voice:   989-673-6741
Fax:     989-673-8863

# INVOICE

Invoice Number:   56732
Invoice Date:     May 7, 2015
Page:             1

*Duplicate*

| Bill To: | Ship to: |
|---|---|
| BOERSON FARMS INC<br>6241 RANSOM STREET<br>ZEELAND, MI 49464 | BOERSON FARMS INC<br>6241 RANSOM STREET<br>ZEELAND, MI 49464 |

| Customer ID | Customer PO | Payment Terms |
|---|---|---|
| BOERSONAG | Jr Stealy, east | Net 30 Days |

| Sales Rep ID | Shipping Method | Ship Date | Due Date |
|---|---|---|---|
| | Best Way | | 6/6/15 |

| Quantity | Item | Description | Unit Price | Amount |
|---|---|---|---|---|
| 1.00 | | 726 ft  VALLEY 8000 SERIES CENTER PIVOT | 59,425.00 | 59,425.00 |
| -1.00 | | LESS DISCOUNT | 10,102.00 | -10,102.00 |
| 1.00 | | FREIGHT CHG | 1,500.00 | 1,500.00 |
| 1.00 | | LABOR FEE | 3,750.00 | 3,750.00 |
| | | * CONSISTING OF: 8 5/8" PIVOT POINT, ONE 160' SPAN, ONE 140' HI PROFILE SPAN, ONE 140' SPAN, ONE 135' SPAN, ONE 115' HI PROFILE SPAN, ONE 36' OVERHANG, FLEX, LADDER, HIGH FLOAT TIRES, HIGH SPEED MOTORS, STD GEARBOXES, STD ALIGNMENT, 10 GA SPAN CABLES, RUN LIGHT, 5 HP BOOSTER PUMP w/VALVE & FUSING, CLASSIC PLUS PANEL, COLLECTOR RING, LIGHTNING ARRESTOR, DIRTY WATER FILTER, KOMET SR101 END GUN, I-WOB SPRINKLERS w/POLYHOSE DROPS & REGS, LESS ALL DISCOUNTS. | | |

Check/Credit Memo No:

| | |
|---|---|
| Subtotal | 54,573.00 |
| Sales Tax | |
| Total Invoice Amount | 54,573.00 |
| Payment/Credit Applied | |
| **TOTAL** | **54,573.00** |

Overdue invoices are subject to late charges.



July 31, 2017


Boersen Farms, Inc.
6241 Ransom St
Zeeland, MI 49464
USA


RE:  Notice of Assignment—Agreement No. 046-2739948-001 (the "Account"), between LEAF Capital Funding, LLC and Boersen Farms, Inc. (the "Customer")

Ladies and Gentlemen:

LEAF Capital Funding, LLC ("LEAF") is hereby providing Customer notice that LEAF has assigned to BB&T Commercial Equipment Capital, Inc. ("BB&T") all of LEAF's rights, title, and interests in and to the Account, the related equipment and any related documents.

**As of July 31, the status of the Account is as follows:**

**Monthly Payment: $2,548.94**
**Remaining Term: 23 Months**
**Remaining Payments: 23**
**Contract Balance: $58,625.62**
**Last Payment Received: 06/30/17**
**Next Payment Due: 06/20/2017**

Effective immediately, any amounts due related to the Account shall be paid directly to:

**2 Great Valley Parkway, STE 300**
**Malvern PA 19355**

Should you have any questions please call BB&T at (800) 786-0004.

Very truly yours,

LEAF Capital Funding, LLC

EXHIBIT D



July 31, 2017


Boersen Farms, Inc.
6241 Ransom St
Zeeland, MI 49464
USA


RE:  Notice of Assignment—Agreement No. 046-2739948-004 (the "Account"), between LEAF Capital Funding, LLC and Boersen Farms, Inc. (the "Customer")

Ladies and Gentlemen:

LEAF Capital Funding, LLC ("LEAF") is hereby providing Customer notice that LEAF has assigned to BB&T Commercial Equipment Capital, Inc. ("BB&T") all of LEAF's rights, title, and interests in and to the Account, the related equipment and any related documents.

**As of July 31, the status of the Account is as follows:**

**Monthly Payment: $2,184.07**
**Remaining Term: 34 Months**
**Remaining Payments: 34**
**Contract Balance: $74,258.38**
**Last Payment Received: 06/30/17**
**Next Payment Due: 05/05/2017**

Effective immediately, any amounts due related to the Account shall be paid directly to:

**2 Great Valley Parkway, STE 300**
**Malvern PA 19355**

Should you have any questions please call BB&T at (800) 786-0004.

Very truly yours,

LEAF Capital Funding, LLC

EXHIBIT E



July 31, 2017


Boersen Farms, Inc.
6241 Ransom St
Zeeland, MI 49464
USA

RE:  Notice of Assignment—Agreement No. 046-2739948-005 (the "Account"), between LEAF Capital Funding, LLC and Boersen Farms, Inc. (the "Customer")

Ladies and Gentlemen:

LEAF Capital Funding, LLC ("LEAF") is hereby providing Customer notice that LEAF has assigned to BB&T Commercial Equipment Capital, Inc. ("BB&T") all of LEAF's rights, title, and interests in and to the Account, the related equipment and any related documents.

**As of July 31, the status of the Account is as follows:**

**Monthly Payment: $4,157.70**
**Remaining Term: 34 Months**
**Remaining Payments: 34**
**Contract Balance: $141,361.80**
**Last Payment Received: 06/30/17**
**Next Payment Due: 06/05/2017**

Effective immediately, any amounts due related to the Account shall be paid directly to:

**2 Great Valley Parkway, STE 300**
**Malvern PA 19355**

Should you have any questions please call BB&T at (800) 786-0004.

Very truly yours,

LEAF Capital Funding, LLC

Michigan Department of State - Uniform Commercial Code

Document Number:

**2014090239-4**

Filing Date and Time:

6/20/2014 10:29:48 AM

*(This document was filed electronically.)*

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Gisella Melendez

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

CT Lien Solutions

330 North Brand Blvd.

STE 700

Glendale                         CA      91203

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME BOERSEN FARMS, INC. | | | | | |
|---|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS 6241 Ransom St. | CITY Zeeland | | STATE MI | POSTAL CODE 49464 | COUNTRY USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME LEAF Capital Funding, LLC and/or Its Assigns | | | | | |
|---|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS 2005 Market Street, 14th Floor | CITY Philadelphia | | STATE PA | POSTAL CODE 19103 | COUNTRY USA |

4. COLLATERAL: This financing statement covers the following collateral:
The following items of equipment:   (1) 1119ft VALLEY 8000 SERIES CENTER PIVOT (1) 667 ft VALLEY 8000 SERIES CENTER PIVOT
In addition, the collateral also shall include all parts, accessories, accessions and attachments thereto, and all replacements,
substitutions and exchanges (including trade-ins).

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):   ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
MI-0-43784481

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)          International Association of Commercial Administrators (IACA)

# iLien Cover Page

Date Printed:  12/20/2017

Debtor:
BOERSEN FARMS, INC.
6241 RANSOM ST
ZEELAND, MI  49464

TRANSACTION #:
Ref2:
Ref3:
Ref4:
Ref5:
Ref6:
Ref7:
Law Firm Bill Code:

iLien File #:  66582440
Order Confirmation #:  62017237

UserID:  225410
UserName:  MICHELE VESCI
Number of Collateral Pages Attached:  0

Transaction Type:  Full Assignment
Jurisdiction:  MI, Department of State

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Phone: (800) 331-3282 Fax: (818) 662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**   11033 - BB&T

Lien Solutions
P.O. Box 29071
Glendale, CA  91209-9071

62017237

MIMI

File with: Department of State, MI

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
|---|---|
| 20140902394  6/20/2014  SS MI | (or recorded) in the REAL ESTATE RECORDS<br>Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☒ **ASSIGNMENT (full** or partial): Provide name of Assignee in item 7a or 7b, **and** address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 **and** also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check **one** of these two boxes:          **AND** Check **one** of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only **one** name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **OR** 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only **one** name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| BB&T COMMERCIAL EQUIPMENT CAPITAL CORP. | | | |
| **OR** 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2 Great Valley Parkway, Suite 300 | Malvern | PA | 19355 | USA |

8. ☐ **COLLATERAL CHANGE:** Also check **one** of these four boxes: ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only **one** name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| LEAF CAPITAL FUNDING, LLC AND/OR ITS ASSIGNS | | | |
| **OR** 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:  Debtor Name: BOERSEN FARMS, INC.
62017237

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

CT Lien Solutions
Representation of filing

**This filing is Completed**
File Number : 2015085027-6
File Date  : 11-May-2015

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone: (800) 331-3282 Fax: (818) 662-4141

B. E-MAIL CONTACT AT FILER (optional)
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)   11286 - LEAF Commercial

CT Lien Solutions            47950864
P.O. Box 29071
Glendale, CA  91209-9071      MIMI

File with: Department of State, MI

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| BOERSEN FARMS, INC. | | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 6241 Ransom St | Zeeland | | MI | 49464 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| LEAF Capital Funding, LLC and/or Its Assigns | | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 2005 Market Street, 14th Floor | Philadelphia | | PA | 19103 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
The following items of equipment:

Please refer to Michigan Valley Irrigation Invoice Number 57043 dated April 29, 2015, one page and Invoice Number 57044 dated April 29, 2015, one page.

In addition, the collateral also shall include all parts, accessories, accessions and attachments thereto, and all replacements, substitutions and exchanges (including trade-ins).

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative
6a. Check only if applicable and check only one box:  ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility
6b. Check only if applicable and check only one box: ☐ Agricultural Lien  ☐ Non-UCC Filing
7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor
8. OPTIONAL FILER REFERENCE DATA:
47950864          100-2739948-004

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by CT Lien Solutions, P.O. Box 29071, Glendale, CA 01209-9071 Tel (800) 331-3282

EXHIBIT H

# iLien Cover Page

Date Printed:  12/20/2017

Debtor:
BOERSEN FARMS, INC.
6241 RANSOM ST
ZEELAND, MI  49464

TRANSACTION #:
Ref2:
Ref3:
Ref4:
Ref5:
Ref6:
Ref7:
Law Firm Bill Code:

iLien File #:  66582499
Order Confirmation #:  62017314

UserID:  225410
UserName:  MICHELE VESCI
Number of Collateral Pages Attached:  0

Transaction Type:  Full Assignment
Jurisdiction:  MI, Department of State

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Phone: (800) 331-3282 Fax: (818) 662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**   11033 - BB&T

Lien Solutions
P.O. Box 29071          62017314
Glendale, CA  91209-9071      MIMI

File with: Department of State, MI

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
20150650276  5/11/2015  SS MI

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☒ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:    AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record   ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME |
|---|
| BB&T COMMERCIAL EQUIPMENT CAPITAL CORP. |

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2 Great Valley Parkway, Suite 300 | Malvern | PA | 19355 | USA |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME |
|---|
| LEAF CAPITAL FUNDING, LLC AND/OR ITS ASSIGNS |

9b. INDIVIDUAL'S SURNAME    FIRST PERSONAL NAME    ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX

**10. OPTIONAL FILER REFERENCE DATA:** Debtor Name: BOERSEN FARMS, INC.
62017314

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

# iLien Cover Page

Date Printed:  12/20/2017

Debtor:
BOERSEN FARMS, INC.
6241 RANSOM ST
ZEELAND, MI  49464

TRANSACTION #:
Ref2:
Ref3:
Ref4:
Ref5:
Ref6:
Ref7:
Law Firm Bill Code:

iLien File #:  66582535
Order Confirmation #:  62017399

UserID:  225410
UserName:  MICHELE VESCI
Number of Collateral Pages Attached:  0

Transaction Type:  Full Assignment
Jurisdiction:  MI, Department of State

EXHIBIT I

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Phone: (800) 331-3282 Fax: (818) 662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)** 11033 - BB&T

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

62017399

MIMI

File with: Department of State, MI

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
20150678022  5/14/2015  SS MI

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☒ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:       AND   Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record   ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| | | | | |
|---|---|---|---|---|
| **6a. ORGANIZATION'S NAME** | | | | |
| **OR** | | | | |
| **6b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | | | | |
|---|---|---|---|---|
| **7a. ORGANIZATION'S NAME**  BB&T COMMERCIAL EQUIPMENT CAPITAL CORP. | | | | |
| **OR** | | | | |
| **7b. INDIVIDUAL'S SURNAME** | | | | |
| **INDIVIDUAL'S FIRST PERSONAL NAME** | | | | |
| **INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)** | | | | **SUFFIX** |

| **7c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|
| 2 Great Valley Parkway, Suite 300 | Malvern | PA | 19355 | USA |

**8.** ☐ **COLLATERAL CHANGE:**  Also check one of these four boxes:  ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | | | | |
|---|---|---|---|---|
| **9a. ORGANIZATION'S NAME**  LEAF CAPITAL FUNDING, LLC AND/OR ITS ASSIGNS | | | | |
| **OR** | | | | |
| **9b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor Name: BOERSEN FARMS, INC.
62017399

**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)**

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

**UCC FINANCING STATEMENT**

FOLLOW INSTRUCTIONS

CT Lien Solutions
Representation of filing

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone: (800) 331-3282 Fax: (818) 662-4141

B. E-MAIL CONTACT AT FILER (optional)
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)    11286 - LEAF Commercial

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

48017557

MIMI

File with: Department of State, MI

This filing is Completed
File Number : 2015067802-2
File Date  : 14-May-2015

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BOERSEN FARMS, INC. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 6241 Ransom St | Zeeland | MI | 49464 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| LEAF Capital Funding, LLC and/or its Assigns | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2005 Market Street, 14th Floor | Philadelphia | PA | 19103 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
The following items of equipment: Please refer to Michigan Valley Irrigation Invoices as follows: Invoice Number 56727 dated May 7, 2015, one page; Invoice Number 56728, dated May 7, 2015, Invoice Number 56731 dated May 7, 2015, one page; Invoice Number 56732, dated May 7, 2015 . In addition, the collateral also shall include all parts, accessories, accessions and attachments thereto, and all replacements, substitutions and exchanges (including trade-ins).

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
48017557        100-2739948-005

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by CT Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282